**MUEBLES e INMUEBLES, S.A., et al.**

v.

**Honorable Milton L. LeBLANC, Collector of Customs, etc., et al.**

Civ. A. No. 11314.

United States District Court
E. D. Louisiana,
New Orleans Division.
March 29, 1963.

James J. Morrison, New Orleans, La., for plaintiffs.

Louis C. LaCour, U. S. Atty., New Orleans, La., Kathleen Ruddell, Asst. U. S. Atty., New Oreans, La., for defendants.

CHRISTENBERRY, Chief Judge.

This is an action for prohibitory and mandatory injunctive relief against Theodore Lyons, Collector of Customs of the Port of New Orleans and Milton L. LeBlanc, Assistant Collector of Customs, and for damages against Theodore Lyons and Milton L. LeBlanc for negligence, and further for damages against the United States under the Federal Tort Claims Act.

Petitioners, Muebles e Inmuebles, S.A. and Midwest Cordage Company, Inc., are and were respectively the owner and United States licensee of the registered trade-mark "MIDWEST", which is registered under the title relating to "Baler, Binding, Wrapping Twines and Ropes".

On or about June 14, 1961, a shipment of baler and binding twine marked "MIDWEST" was offered for customs entry at the United States Customhouse at New Orleans by a New Orleans brokerage office acting as agents for the importers of the twine, Emile Regnier Company, of New York. Pursuant to the notification to the Collector of Customs by petitioners' attorney that the shipment contained articles bearing infringing trade-marks, an inspection of the shipment was made by the Customs Bureau which then advised the Assistant Collector that markings on the shipment were in violation of and infringed upon the trade-mark of the petitioners and that "the word 'MIDWEST' shall be removed and obliterated under Customs' supervision without expense to the Government prior to the release of the merchandise from Customs' custody". The determination of infringement having been made, the shipment was accordingly seized by the Collector of Customs at New Orleans under the authority of 15 U.S.C.A. § 1124. Following the seizure, Emile Regnier Company, the importer,

requested, and the Customs Bureau allowed that the shipment be shipped by special manifest and under bond from the Customs office in New Orleans to the Customs office in St. Paul, Minnesota, where the obliteration of the offending trade-mark would be made prior to the release of the goods at St. Paul. On July 11, 1961, the twine was so shipped by special manifest which contained the inscription "This merchandise is being shipped to St. Paul, Minn., so that the mark 'Midwest' may be obliterated by the buyer, Midwest Wire and Steel Products Co., under the supervision of the Collector of Customs. This mark 'Midwest' is in violation of the Trade Mark Act, Section 42." The shipment arrived at St. Paul on July 20, 1961, and during the following week the name "Midwest" was removed from all outside containers, bails and individual balls of twine under the supervision of George J. Burns, Customs Inspector at St. Paul.

Petitioners request that a mandatory injunction issue, ordering the defendants to deny entry of the shipment, and demand judgment against Theodore Lyons, Collector, Milton L. LeBlanc, Assistant Collector, and the United States in the amount of $12,500.00, representing the amount of petitioners' estimated losses. Defendants have moved for summary judgment, which motion is now before this Court.

Adverting first to the application for injunctive relief, on July 18, 1961, the date on which the present suit was filed and such application was made, the shipment of twine in question had already been released from the control of the defendants. It was then en route to St. Paul. This fact is recognized and specifically alleged in petitioners' complaint. Thus, even should this Court find illegal action on the part of the individual defendants and be persuaded to grant the injunctive relief sought by petitioners, namely that the defendants be ordered to deny and set aside the admittance of the shipment at New Orleans, such an order would be so plainly ineffectual under the circumstances of this case as to render the proposed order unwarranted.

The foundation of petitioners' argument rests on their interpretation of Section 42 of the Trade-Mark Act (15 U.S. C.A. § 1124), which, they contend, *absolutely* prohibits the importation of any article bearing an infringing trademark. Defendants, on the other hand, urge that they admitted and forwarded the shipment to St. Paul pursuant to a notice of authorization by the Commissioner of Customs at Washington and pursuant to the provisions of a valid customs regulation (19 CFR 11.17) promulgated by the Secretary of the Treasury.

19 CFR 11.17(a) provides:

"Merchandise which bears a mark * * * simulating a trade-mark * * * entitled to the protection of * * * Section 42, Trade-Mark Act of July 5, 1946, if not imported by or for the account of, or with the appropriate written consent of, the owner of the United States trade-mark or trade-name shall be detained for a period of 30 days from the date of notice to the importer that the merchandise is prohibited importation to permit the importer to secure the written consent of the owner of the trade-mark or trade-name."

Section (b) of that regulation further provides:

"Whenever merchandise is detained in accordance with paragraph (a) of this section and * * * when a petition therefor is made by the importer prior to final disposition of the merchandise, the collector may release the merchandise upon the condition that the name, mark, or trade-mark be removed or obliterated prior to the release * * * [of the merchandise]."

██ Petitioners claim that the regulation, the decision of the Customs Bureau and the action by defendants pursuant thereto are invalid and unlawful. In this regard, petitioners bear a

heavy burden, for it is clearly established that a regulation promulgated by a legitimate authority may be annulled only when, in the Court's judgment "it is plainly and palpably inconsistent with law". Boske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 706, 44 L.Ed. 846. Indeed, the obvious and express purpose of Federal Trade-Mark legislation as respects the trade-mark owner is to protect the owner's investment of "energy, time and money * * * from its misappropriation by pirates and cheats". (S.R.No.1333, May 14, 1946.) It is apparent, and this Court finds, that no injury could result or in fact has resulted to petitioners, as trade-mark owners, from the existence or application of such a regulation which allows release of goods into commerce after the infringing trade-mark has been obliterated. Certainly, such a regulation does not violate the terms or purpose of the federal legislation protecting trade-mark owners. It is not "plainly * * * inconsistent with law."

The cause of action urged against the Collector and Assistant Collector of Customs at New Orleans arises from petitioners' charge that these parties were grossly negligent in allowing the twine to be shipped to St. Paul and in permitting eight bales of twine to be released during the time that the shipment was in their physical control at New Orleans. Petitioners further allege that as a result of defendants' allowing the shipment to be released from their custody an additional 220 bales of bailer twine and 17 bales of binder twine were allowed to be released at St. Paul.

First, this Court finds that the defendants, Collector and Assistant Collector of Customs at New Orleans, acting under the color of a valid regulation and pursuant to an authoritative directive of the Bureau of Customs, are, as a matter of law, not responsible to petitioners.

Secondly, the charge that defendants directly and indirectly allowed some of the merchandise to be released from their custody is equally unfounded. Affirmative and uncontradicted affidavits filed on behalf of defendants show definitely that eight or nine bales of twine, alleged to have been released at New Orleans, were in fact "short-shipped" to this country from their foreign origin. Uncontradicted affidavits further show that the twine allegedly released at St. Paul was released only after all infringing trade-marks had been removed. Petitioners, therefore, could not have been damaged.

■ Lastly, the cause of action asserted against the United States under the Federal Tort Claims Act is expressly prohibited by 28 U.S.C.A. § 2680(a), which provides that the jurisdiction granted the United States District Courts by 28 U.S.C.A. § 1346 shall not apply to:

"(a) any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or a duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

In view of this statute, this Court is compelled to decline jurisdiction over the cause of action sought to be urged against the United States in this matter.

In accordance with the foregoing reasons, the motion for summary judgment filed by defendants, Milton L. LeBlanc, individually and as Assistant Collector of Customs District No. 20, Port of New Orleans, Theodore Lyons, individually and as Collector of Customs District No. 20, Port of New Orleans, and the United States of America is granted.